IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| John Woods, | ) | |
| Plaintiff, | ) | Civil Action No.2:11-2855-RMG-BHH |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| The Boeing Company, | ) | |
| Defendant. | ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 57.] The plaintiff has pled claims for failure to accommodate, discrimination, retaliation, and harassment in violation of the Americans with Disabilities Act (ADA).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

The defendant manufactures the 787 Dreamliner commercial aircraft at its facility in Charleston, South Carolina. In September 2009, the defendant hired the plaintiff as a site Level 3 Manufacturing Engineer, a position which he held until he was fired, on September 22, 2010. (Pl. Dep. at 41-55.) During his employment, the plaintiff had two direct managers: Mike Butcher was his manager from his hire date until June 4, 2010, when Marie Laczynski became the supervisor of the Manufacturing Engineering organization and the plaintiff's manager. *Id.* at 62-63.

According to a Performance Management Plan, one of the plaintiff's key job functions was to create comprehensive work planning repair templates. (Def. Ex. B.) The

manufacturing "planners" in the defendant's Composite Materials Fabrication Department use these templates as a guide in writing specific work instructions for future mechanical repairs on the Dreamliner. (Pl. Dep at 66-67; Laczynski Dep. at 43.)  Notwithstanding, the plaintiff acknowledges that from September 2009 until June 3, 2010 – the time period when Mike Butcher was his direct manager – he did not prepare any of the major repair templates that the Composite Materials Fabrication Department needed. (Pl. Dep. at 62–63.)

On June 4, 2010, Marie Laczynski replaced Butcher as the plaintiff's direct manager. (Laczynski Dep. at 18-20.)  The schedule for completion of the necessary templates was apparently modified numerous times.  (Pl. dep. at 372; Def. Ex. H. at 000320-321; Def. Ex. I at 1088-89; Ex. L at 325.) There is evidence that the plaintiff was consistently unable to meet those modified deadlines. (Def. Ex. J; Pl. Dep. at 513-14.)

On August 16, 2010, Laczynski issued a Corrective Action Memo (CAM) and placed the plaintiff on a Performance Improvement Plan (PIP) for the plaintiff having three times failed to meet his template deadlines or complete any templates at all. (Def. Ex. M at 000309; Def. Ex. N at 000084-000086; Pl. Dep. at. 393.)  The PIP initially targeted a 30-day period for improvement, which was later extended by six days to accommodate the plaintiff's vacation and jury duty. (Def. Ex. N; Def. Ex. O at 000143; Laczynski Dep. at 18 – 24; Pl. Depo. at 399.)  The PIP required the plaintiff to "[r]e-baseline [his] repair planning template release schedule," "complete templates on time and/or get help before due date," and "[a]ddress speed of response and work release." (Def. Ex. N.)

On August 18, 2010, two days after receiving the CAM and PIP, the plaintiff told Laczynski that he had a disability.  (Pl. Dep. at 359-60.) The following day, the plaintiff called the defendant's Accommodations Services line and asserted that he had a "mental impairment" that had caused some problems with his work performance. (Def. Ex. W. at 000642-000644. )   On September 1, 2010, the plaintiff submitted a "Reasonable

2

Accommodation and Health Care Provider Information" form (the "RA Form") signed by his doctor, James Jenkins. (Def. Ex. Y at 0997 – 0999; Pl. Dep. at  367-68.) The RA Form identified three medical conditions (Attention Deficit Disorder, Dysthymia, and Obsessive Compulsive Disorder) and requested four accommodations: (1) that he should receive "frequent positive affirmations" and "behavior modification though encouragement"; (2) that the defendant should provide "tolerance for less than perfection"; (3) that his responsibilities should be limited to either "supervisory or individual contributor but not both at the same time"; and (4) that the defendant should adjust his workday to 8:00 – 4:30. (Def. Ex. Y.) The plaintiff, independent of his physician, also requested a retraction of the CAM and PIP.

The defendant implemented the last two of the physician recommended accommodations only.

There is evidence that, essentially, the plaintiff failed to meet all of the requirements of the PIP.  By the defendant's count, he completed and released one template.  (Def. Ex. T at 2245-2279; Pl. Dep at 423-24.)  The plaintiff contends that he completed three others, although they were neither submitted nor "released.  (Pl. Dep. at 390-91, 592-93.)  It is undisputed, however, that the plaintiff neither started nor completed 13 of the 17 templates listed on the four repair template schedules that existed between May and September of 2010. (Pl. Dep. at 506.)

On September 22, 2010, Laczynski terminated the plaintiff's employment for failing to abide by the requirements established in the PIP and for failing to perform the duties of a Level 3 Manufacturing Engineer at Boeing. (Def. Ex. V at 000312 – 000313; Laczynski Dep. at 268, 292.)

3

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to

4

preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

The defendant liberally interprets the language in the Complaint to suggest that the plaintiff makes four ADA related claims: (1) failure to accommodate, (2) discriminatory discharge, (3) retaliation, and (4) harassment. Although the Complaint references the termination of the plaintiff's employment, the plaintiff does not allege that he was fired *for* his disability. Rather, he complains that the termination of his employment occurred for the failure to provide necessary accommodations and in retaliation for his having requested the same. (Compl. ¶ 22.) But, whatever the plaintiff meant initially, he does now, in response to Summary Judgment, make some defense of discriminatory discharge and harassment claims. The Court would consider each, as they warrant it.

### I.    Failure to Accommodate

The defendant first contends that the plaintiff's failure to accommodate claim should be dismissed. The plaintiff claims that he requested that the defendant accommodate his disability in various ways but that it refused.

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Relevant here, an employer must make "reasonable accommodations" for a disabled employee, unless the company can demonstrate that the accommodation "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). "The ADA does not require that the employer go out of his way to provide an accommodation for a disabled employee, but only requires that accommodations are 'reasonable.'" *Schneider v. Giant of Md., LLC*, 389 Fed. Appx.

263, 271 (4th Cir. 2010) (citations omitted). "The plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin*, 369 Fed. Appx. at 481. Absent direct evidence of discrimination, a plaintiff may rely on the burden shifting approach, first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make his case.[1] *See Edmonson v. Potter*, 118 Fed.Appx. 726, 728 (4th Cir. 2004).

The defendant makes essentially one argument – that the plaintiff is not a "qualified individual"under the Act. *See* 42 U.S.C. § 12112(a). As an initial matter, the ADA defines "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of [his] employment position." 42 U.S.C. § 12111(8). In order to be considered a "qualified individual," therefore, a plaintiff must establish (1) that he "could perform the essential functions of the job," and, if he can not, (2) that a "reasonable accommodation by [his employer] would enable [him] to perform those functions." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (internal quotation marks omitted); *see also Rhoads*, 257 F.3d at 387 n.11 (requiring a plaintiff to establish "that with reasonable accommodation he could perform the essential functions of the position").

---

[1] Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.

In a failure to accommodate claim argued pursuant to *McDonnell Douglas*, the Fourth Circuit has incorporated the "qualified individual" inquiry into the third element of the plaintiff's *prima facie* case. *See Wilson v. Dollar General Corp.*, --- F.3d ----, 2013 WL 2130939, at *7 (4th Cir. 2013). Specifically, to establish a *prima facie* case for a failure to accommodate, the plaintiff must show: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ; and (4) that the employer refused to make such accommodations. *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir.2001). As stated, the defendant has essentially challenged the plaintiff's ability to establish the third element.[2]

Initially, the defendant first contends that the requested accommodations are simply not reasonable. The plaintiff has proposed that the following accommodations would have allowed him to perform the essential functions of his job.

As recommended by his doctor, in a Reasonable Accommodation form submitted on September 1, 2010, the plaintiff requested the following accommodations:

> 1) Supervisor or individual responsibilities but not both at the same time.
>
> 2) Frequent positive affirmations
>
> 3) Behavior Modification through encouragement
>
> 4) Tolerance for less than perfection
>
> 5) Adjusted work schedule 8:00-4:30

(Def. Ex. Y.)

---

[2] With respect to elements one and four, the defendant never challenges the plaintiff's alleged disability itself and admits that it did not make all requested accommodations. With respect to the second element, the defendant implies that notice of disability was only given after the PIP and CAM, but strong evidence exists that the plaintiff provided notice of a "qualified disability" at the time of his employment. (TBC/Confidential at 000007.) The defendant has made no reply in this regard.

7

The plaintiff additionally elaborated on these requests:

1) Halt any punitive actions resulting from the current PIP. Deletion of the PIP and the Employee Corrective Action Memo for Written Warning, because any accommodations were not in place during the subject time period. If a PIP were issued after any accommodations were in place, then it would have validity, but that is not the case at this time.

2) Permanent duration. Much of what is called for (accommodation) in my case is management's sustained, long term, elevated understanding of symptomatic behavior, and an atypically higher tolerance or flexibility level (within reason) towards symptomatic behaviors. I also feel it necessary for my management's sustained special attention to: Boeing POL-3 "People" as an accommodation in regards to chronic mild depression, chronic poor self esteem, to counteract their annoyances resulting from my other identified handicaps, and to counteract the difficulty that can be expect [sic] in management's (anybody's) ability to sustain an accommodation towards an employee with invisible handicaps, and Boeing POL-5 "Equal Employment Opportunity" as an accommodation to counteract the difficulty that can be expect [sic] in management's (anybody's) ability to sustain the application of affirmative action in support of an employee with invisible handicaps.

3) Management's higher tolerance (within reason), day-to-day and in performance appraisals, towards symptomatic behavior, and restraining (within reason) from a consequential or negative approach towards symptomatic behavior modification, to one of encouragement. Understanding that attention deficit results in verbal communication difficulties for me such as diminished on the spot recall and diminished ability to be tactful. This is why I am better at written communication because it gives me more time to provide an in-depth response. A possible accommodation could be to allow me to provide follow-up communication if necessary. Understanding that a lifetime of being scolded or negatively judged make me fearful around management, defensive, and also contributes towards verbal communication difficulties. It also results in an overly serious personality.

4) Permanent duration. Tolerance day-to-day and performance appraisals towards my working to the last minute in preparation for a meeting, a deadline, leaving from home, and leaving from work.

5) Same as my doctors requested accommodations.

(TBC/Confidential at 000336.)

As an initial matter, the Court would not read the plaintiff's elaboration to substantially add to the recommendations of his physician, other than for removal of the PIP and the Corrective Action Memo.  The parties have not argued, and the Court is unaware of, any requirement that the plaintiff medically support every accommodation proposed in the "interactive process." *See Wilson v. Dollar General Corp.* --- F.3d ----, 2013 WL 2130939, at *9 (4th Cir. 2013) (describing interactive process).  His views, therefore, are at least relevant to the necessary and interactive process, albeit plainly not dispositive.  In its argument, the defendant does not make serious distinction between the plaintiff's request to withdraw the PIP and CAM and the other physician recommended accommodations.

The Court would also acknowledge the unusually nonspecific and subjective quality of the accommodations requested.  As the defendant complains, on their face, they do not lend themselves easily to clear implementation or assessment. The defendant, in fact, implemented the two most concrete proposals – no supervisory responsibilities and the schedule modification.  (Def. Ex. AA.)  The defendant refused, however, to retract the PIP or the CAM, and effectively rejected any serious consideration that it would accept "less than perfection" or frequent and positive encouragement as reasonable accommodations.[3]

It considers all such requests unreasonable, principally.  On paper, the Court is likewise not impressed by the plaintiff's list of accommodations or the process by which they were developed.  But, whatever their quality or effectiveness, they are anything but onerous. Employers are not required to provide accommodations that "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). "Undue hardship" is defined as "an action requiring significant difficulty or expense," when considered in light of certain factors. 42 U.S.C. § 12111(10)(A). Those factors include the nature and cost of the accommodation, the overall financial resources of the employer and number of persons

---

[3]  Even as the defendant did not formally adopt these accommodations, it has put forward evidence that "perfection" was never the expectation, with respect to the plaintiff specifically (see Laczynski Dep. at 268-69), and that it used words of affirmation to encourage his performance  (Pl. Dep. at 260-62; Laczynski Dep. at 270).

9

employed, the type of operation, and the overall impact on the operation of a facility. 42 U.S.C. § 12111(10)(B).

Affirming words, tolerance, patience, encouragement, and retraction of the PIP and CAM are largely cost free.  The defendant has not argued that the requested accommodations are burdensome, as in complicated to implement, or cost prohibitive, as in expensive.  It does say that the future safety of commercial passengers is dependent on the quality work of engineers like the plaintiff but, at the same time, concedes that absolute perfection was never an expectation.  (Def. Resp. at 15; see Laczynski Dep. at 268-69.) In other words, something "less than perfection" is not entirely unreasonable and could – indeed was – accommodated.

The defendant does, however, make a strong case that the more amorphous accommodations of positive affirmation and encouragement are unreasonable as a matter of law.  Other courts have essentially concluded as much.  *See, e.g., Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 579 (3d Cir. 1998) (holding that "request to be transferred away from individuals causing  . . .  prolonged and inordinate stress" by plaintiff with obsessive/compulsive disorder "was unreasonable as a matter of law under the ADA"); *Gonzagowski v. Widnall*, 115 F.3d 744, 747–48 (10th Cir. 1997) ("While specific stressors in a work environment may in some cases be legitimate targets of accommodation, it is unreasonable to require an employer to create a work environment free of stress and criticism."); *Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 442 (6th Cir. 1991) (rejecting a request for "occasional expression of support" to help plaintiff "maintain a positive and cooperative attitude" because it would be "unreasonable to require [an employer to] . . . immunize [the plaintiff] from any criticism in order to accommodate his disability"); *see also Mack v. State Farm Mut. Auto Ins. Co.*, 2000 WL 52888, at *5 (7th Cir. 2000) (holding that request by plaintiff with obsessive/compulsive disorder for employer to "leave him alone" was unreasonable).  In varying ways, not every cited case above is factually or procedurally plumb to the present case but they certainly support the generally intuitive reaction that an

10

accommodation which cannot be meaningfully and predictably implemented or enforced is likely not reasonable. The Court is still not persuaded, however, that this type of request, therefore, represents a kind of "hardship" which the defendant is simply excused from attempting.

The defendant also complains that removal of the PIP and CAM was an unreasonable request for accommodation because the ADA does not require that the plaintiff be treated preferentially or that it abandon legitimate company policy. The request can certainly be viewed as one for preferential treatment. But, it can also be viewed as a request for reassessment of the PIP and CAM determinations in light of new information. In other words, from the plaintiff's perspective the prior performance assessments and the future performance goals, in the PIP and CAM respectively, are necessarily incomplete and inaccurate because they do not take into account, fully, either the plaintiff's alleged disability or requested accommodations. The undersigned appreciates how the accommodation could be interpreted in this way – as more than just a request for a gratuitous or symbolic withdrawal of a bad evaluation. And, viewed through that lense, the accommodation is not unreasonable in the way the defendant describes. Removal of the PIP and CAM would be corrective rather than preferential. Moreover, again, such an accommodation comes at essentially no expense to the defendant, relative to the types of accommodations typically at issue in these kinds of cases.[4]

The Court does not view the plaintiff's accommodations list as impressive or promising. But, it is not burdensome. The accommodations come, largely, with the blessing of the plaintiff's physician. Additionally, the plaintiff suffers a kind of emotional and psychological disability. In truth, it should not be surprising that  accommodations to reduce the triggering stressors for such a condition would be of a qualitative and subjective, even

---

[4] The defendant would likely argue that delay in their ability to demand performance and ultimately replace poor performance is an obvious cost. Some additional burden in this regard does not seem like an undue hardship in the way that reassignment or restructuring or some other significant organizational accommodation might pose.

amorphous, kind.  By the narrowest margin, the plaintiff has created issues of fact concerning the third element  of, and thus the entire, *prima face* case, as no other element is challenged.

To the extent the defendant makes the same argument in the broader context of the statute's demand that he be a "qualified individual," with the burden to demonstrate that such accommodations would allow him to do the work, *Tyndall*, 31 F.3d at 213,the Court would still recommend the claim proceed.     Namely, the plaintiff's accommodations were never given any particular opportunity to be tested.  Most were rejected and his employment was terminated within 36 days of the limited implementation of those that were not.  (See Def. Exs. M at 000309, N at 000084-86,V at 312-13.)  This is not a situation where "extensive accommodations" proved unsuccessful.  *See id.* at 214.

And, at heart, this is the Court's principle concern.  There is a kind of evidentiary story here that belies application of any particular element of the legal framework. Specifically, the defendant viewed the plaintiff's requested accommodations, produced two days after the issuance of the PIP and CAM, with justifiable suspicion.     But, that request of the plaintiff triggered various legal obligations under the ADA, even as the defendant was privately dubious.  Long before any performance issues, the plaintiff had put the defendant on notice of a "qualified disability."  (TBC/Confidential at 000007.)  Whether or not the defendant was consciously aware of that admission is not relevant.  The evidence is undisputed that the plaintiff did not make up, for the first time, an alleged disability at the time of his PIP and CAM.  Even still, the defendant surely viewed the asserted need that such disability be accommodated, days after a poor evaluation, as too convenient. Nevertheless, it had a duty to engage in an "interactive process."  *Wilson v. Dollar General Corp.* --- F.3d ----, 2013 WL 2130939, at *9 (4th Cir. 2013).

The duty to "engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Id.*; *see also Dargis*

*v. Sheahan*, 526 F.3d 981, 988, (7th Cir.2008) ( "When . . . the disabled worker has communicated his disability to his employer and asked for an accommodation so that he can continue working, the employer has the burden of exploring with the worker the possibility of a reasonable accommodation.") (internal quotation marks omitted); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996) ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."). The purpose of the ADA's "interactive process" requirement is to "identify the precise limitations resulting from the disability and [the] potential reasonable accommodations that could overcome those limitations." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007).

But the interactive process "is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." *Rehling v. City of Chi.*, 207 F.3d 1009, 1015 (7th Cir.2000) (internal quotation marks omitted). Therefore, even "if an employer's duty to engage in the interactive process is triggered, the employer's liability for failing to engage in that process may collapse for a number of reasons." *See Wilson*, 2013 WL 2130939, at *9.

For example, an employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible. *Id.; see also Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1231 (10th Cir.2009) ("Prior cases establish that a disabled plaintiff alleging that an employer failed to properly engage in the interactive process must also establish that the interactive process would have likely produced a reasonable accommodation."); *see also Dargis*, 526 F.3d at 988 ("The [employer] being able to make the required showing that no reasonable accommodation was possible, there was no further interactive process necessary.").

13

Likewise, "liability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Wilson*, 2013 WL 2130939, at *9 (quoting *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir.2012)) (internal quotation marks omitted).

Three pieces of evidence raise issues of concern for the Court. First and most critically, the plaintiff has produced an email that suggests maybe some view about necessary accommodations was made *prior* to the interactive meeting between the defendant and the plaintiff. An email dated, September 7, 2010, reads, "Robert [Gulley] told him the only accommodation we were told we need to comply with is the 8 AM start time. Robert told John that he can speak with the site accommodation focal if he feels he needs other accommodations." (TBC/Confidential at 000653.)  In that same email, however, it was indicated that maybe Robert Gulley's[5] view was later disavowed. *Id.* But, to the extent a jury might interpret the email as some indication, by senior management, that a preconceived determination concerning accommodations had been made, it would be substantial evidence of a lack of good faith in the interactive process.

Second, the defendant, clearly unimpressed with the plaintiff's recommendations, neither followed up with his physician or offered accommodations of its own in response. "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005). "In other words, an employer cannot shield itself from liability by choosing not to follow up on an employee's requests for assistance, or by intentionally remaining in the dark." *Id.* If the defendant felt like their existed too much ambiguity in the requested accommodations, it could have countered with

---

[5]  Gulley was a Senior Manager for Manufacturing Planning.

14

some detail, by offering more enforceable criteria.  It is not the defendant's job to propose accommodations.  But, there is no evidence of a dialogue, to wit, interaction.

Lastly, and as noted, the plaintiff's employment was terminated only 36 days after the issuance of the PIP and CAM.  (See Def. Exs. M at 000309, N at 000084-86, V at 312-13.)  And, while within the context of the original 30 day period provided by the PIP, 36 days seems generous, relative to the plaintiff's recent request for accommodation and disability, it seems too little.  The defendant emphasizes that the employer is not required to wait an "indefinite" amount of time to see if an accommodation is effective.  *See Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).   Indeed, the Fourth Circuit has indicated that the accommodation should "presently, or in the immediate future" enable the plaintiff to perform the essential functions of his job.  *Id.*  Even still, the relatively short time after the plaintiff's request for accommodation is a compounding evidentiary factor in the Court's view.

The law would probably not allow any of these three cited pieces of evidence alone (maybe with the exception of the email), to save the claim.  But, taken together, the Court believes that they create issues of fact as to bad faith in the interactive process.  Courts have concluded that "a genuine issue of material fact as to bad faith in the interactive process also generates a genuine issue of material fact as to *pretext*."  *Valentine v. American Home Shield Corp.*, 939 F. Supp. 1376, 1402 (N.D. Iowa 1996) (emphasis added); *see also Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1020 (8th Cir. 2000). Accordingly, the plaintiff has minimally satisfied the proof strictures of *McDonnell Douglas*, even as the defendant has indicated that the plaintiff's complete inability to perform his job was the real and non-discriminatory basis for the termination.[6]

It is recommended that the failure to accommodate claim should proceed.

## II.    ADA Retaliation Claim

---

[6] "Job performance" is widely recognized as a "valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998).

The plaintiff also contends that the defendant retaliated against her for opposing these actions.  He contends that his request for accommodation and a complaint made to Human Resources, on July 13, 2010, was protected activity under the ADA.  He further contends that the defendant retaliated against him both in its refusal to accept the requested accommodations and in the termination of his employment.

Section 503(a) of the ADA prohibits retaliation by an employer against an employee who enforces his rights under the ADA. *See* 42 U.S.C.A. § 12203(a). To prevail on a retaliation claim, the employee must first establish a *prima facie* case of retaliation by a preponderance of the evidence.  *See Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 60 (4th Cir. 2002). To do so, a plaintiff must prove that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.*; *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). If the plaintiff satisfies this burden, then his employer must articulate a legitimate non-retaliatory reason for its action. *See Lamb*, 33 Fed. Appx. at 60.  Should the employer do so, then the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is pretext and that the real reason for the employer's action was to retaliate against him for having taken the protected action of requesting an accommodation.  *Id*.

A.    ***Prima Facie* Case**

1.    **Protected Activity**

The defendant contests whether the plaintiff engaged in any protected activity but concedes it in the same moment, essentially.  As an initial matter, the Court would agree with the defendant that the plaintiff's July 13, 2010 email to Human Resources is not protected activity because it did not relate to any discrimination based on his disability. (Def. Ex. CC.)  The ADA requires that the protected activity be directed towards conduct by the employer that is unlawful under the particular statute in question. *See* 42 U.S.C. § 12203(a). The Fourth Circuit, in an unpublished opinion, stated with respect to protected

16

activity under Title VII (which employs similar language to the ADA and FMLA), "by its very terms, [the statute] requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair." *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan.26, 1999). Other courts have similarly concluded. *See, e.g., Jeseritz v.. Potter*, 282 F.3d 542, 548 (8th Cir.2002) (finding opposition activity must be directed towards employer behavior that the employee reasonably believes to be "in violation of the statute in question"); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995) (finding in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); *Peeples v. Coastal Office Prods., Inc.*, 203 F.Supp.2d 432, 466 (D. Md. 2002) (finding an email from an employee claiming he was "protected by the ADA" was not opposition activity because it did not claim the employer "was then or was about to violate the ADA").

But, the defendant concedes that the plaintiff's request for accommodation *does* constitute protected activity and, thus, the first element of a *prima facie* case is satisfied. (Def. Mem. Supp. Summ. J. at 31.) Instead, the defendant principally argues that it is not causally related to any termination.

### 2. Causal Connection

The defendant argues that the plaintiff was terminated only after he was placed on the PIP and, therefore, there is no evidence that it was related to his accommodation requests. (Def. Mem. Supp. Summ. J. at 34.) But, the Fourth Circuit has held that, to establish a *prima facie* case, "very little evidence of a causal connection is required" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a prima facie retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics*, Inc., 871 F.2d 452 (4th Cir.1989) (holding three month time period

17

between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). The 36 day period between the plaintiff's request for accommodation and the termination of his employment is sufficiently close in time to create issues of fact concerning the plaintiff's *prima facie* case.

### B.    Pretext

Proximity in time alone, while sufficient for the *prima facie* case, is insufficient evidence of pretext from which a jury could infer discriminatory retaliation. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 & n.5 (8th Cir. 1998) (holding that while close proximity in timing may be sufficient for a jury to find the causation element of plaintiff's prima facie case, it is insufficient to establish pretext). Nevertheless, the Court believes that the closeness in time coupled with the evidence of possible bad faith in the interactive process, described above, is sufficient to survive summary judgment.

It is recommended that the retaliation claim not be dismissed.

### III.   Discriminatory Discharge

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) he is disabled; (2) he was discharged; (3) at the time of the discharge, he was performing her job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raised a reasonable inference of unlawful discrimination." *Ennis*, 53 F.3d at 58.

For the unique elements of those claims, the plaintiff has made some minimal showing as to a failure to accommodate and retaliation. But, what is virtually undisputed in the record was that the plaintiff had failed produce essentially any of the required work. Indeed, the evidence appears undisputed that, out of the 17 that were expected of him, the plaintiff produced and released exactly one template prior to his termination. (See Def. Ex. T, V; Pl. Dep. at 62-63.) At best, he completed 4 of 17. (Pl. Dep. at 506.) The plaintiff

18

makes some limited excuse regarding certain templates, but, in all, creates no issues of fact that he in any way was meeting the legitimate expectations of the defendant in the short time he was employed. He does not even attempt to do as much. He cannot satisfy the third element of his *prima facie* case of discriminatory discharge.

## IV.     Hostile Work Environment Claim

The defendant has also moved for dismissal of the plaintiff's hostile work environment claim. The plaintiff admits that no one teased him or threatened him physically. (Pl. Resp. at 28.)

To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that he was subjected to (1) unwelcome harassment; (2) based on her race; (3) that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) that is imputable to the defendant. *See  EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir.2009).

The Court readily finds that the plaintiff cannot create issues of fact as to third element.

### 1.     Severe or pervasive

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc). First, the plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

Issues of fact exist as to the plaintiff's subjective impression. The plaintiff claims he was affected by the defendant's treatment.

As to the objective severity of the harassment, however, it "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the

circumstances,'" giving "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81; *see also Harris*, 510 U.S. at 23 (warning whether a hostile environment actually existed "can be determined only by looking at all the circumstances"). "There is no mathematically precise test" for determining when a hostile or abusive work environment exists. *Harris*, 510 U.S. at 22. The circumstances that should be considered include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). But, "'no single factor is' dispositive." *Sunbelt*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23).

In order to be actionable, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Id.* It has stated, therefore, that the "task then on summary judgment is to identify situations that a reasonable jury might find . . . instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id.* (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). "[W]hether harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199-200 (4th Cir. 2000) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000)).

Honestly, the Court does not know what conduct the plaintiff means to highlight. The limited emails, critical of his performance, are not abusive or pervasive and do not constitute harassment related to the plaintiff's disability. There is simply nothing extreme about any conduct alleged. The defendant was dissatisfied with the plaintiff's work. The evidence

20

does not even begin to approach a condition from which a jury should be permitted to conclude severity or pervasiveness.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 57] be GRANTED in part and DENIED in part. Specifically, the defendant's motion as to the plaintiff's claims for discriminatory discharge and hostile work environment should be GRANTED. The defendant's motion as to the plaintiff's claims for a failure to accommodate and for retaliation, however, should be DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

June 10, 2013
Charleston, South Carolina

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).