IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| John Woods,<br><br>                       Plaintiff,<br><br>vs.<br><br>The Boeing Company,<br><br>                       Defendant. | Civil Action No.2:11-2855-RMG-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docs. 58, 59.] The plaintiff has pled claims for failure to accommodate, discrimination, retaliation, and harassment in violation of the Americans with Disabilities Act (ADA). The defendant has pled counterclaims for breach of contract, conversion, breach of duty of loyalty, trespass to chattels, and violation of the South Carolina Uniform Trade Secrets Act. [Doc. 33.] The defendant has moved for partial summary judgment in its own favor as to its breach of contract counterclaim, only. [Doc. 58.] The plaintiff, however, has moved for summary judgment against the defendant and dismissal of all its counterclaims. [Doc. 59.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The defendant manufactures the 787 Dreamliner commercial aircraft at its facility in Charleston, South Carolina. In September 2009, the defendant hired the plaintiff as a site Level 3 Manufacturing Engineer, a position which he held until he was fired, on September 22, 2010. (Pl. Dep. at 41-55.) During his employment, the plaintiff had two direct managers:

Mike Butcher was his manager from his hire date until June 4, 2010, when Marie Laczynski became the supervisor of the Manufacturing Engineering organization and the plaintiff's manager. *Id.* at 62-63.

According to a Performance Management Plan, one of the plaintiff's key job functions was to create comprehensive work planning repair templates. (Def. Ex. B.) The manufacturing "planners" in the defendant's Composite Materials Fabrication Department use these templates as a guide in writing specific work instructions for future mechanical repairs on the Dreamliner. (Pl. Dep at 66-67; Laczynski Dep. at 43.) Notwithstanding, the plaintiff acknowledges that from September 2009 until June 3, 2010 – the time period when Mike Butcher was his direct manager – he did not prepare any of the major repair templates that the Composite Materials Fabrication Department needed. (Pl. Dep. at 62–63.)

On June 4, 2010, Marie Laczynski replaced Butcher as the plaintiff's direct manager. (Laczynski Dep. at 18-20.) The schedule for completion of the necessary templates was apparently modified numerous times. (Pl. dep. at 372; Def. Ex. H. at 000320-321; Def. Ex. I at 1088-89; Ex. L at 325.) There is evidence that the plaintiff was consistently unable to meet those modified deadlines. (Def. Ex. J; Pl. Dep. at 513-14.)

On August 16, 2010, Laczynski issued a Corrective Action Memo (CAM) and placed the plaintiff on a Performance Improvement Plan (PIP) for the plaintiff having three times failed to meet his template deadlines or complete any templates at all. (Def. Ex. M at 000309; Def. Ex. N at 000084-000086; Pl. Dep. at. 393.) The PIP initially targeted a 30-day period for improvement, which was later extended by six days to accommodate the plaintiff's vacation and jury duty. (Def. Ex. N; Def. Ex. O at 000143; Laczynski Dep. at 18 – 24; Pl. Depo. at 399.) The PIP required the plaintiff to "[r]e-baseline [his] repair planning template release schedule," "complete templates on time and/or get help before due date," and "[a]ddress speed of response and work release." (Def. Ex. N.)

On August 18, 2010, two days after receiving the CAM and PIP, the plaintiff told Laczynski that he had a disability. (Pl. Dep. at 359-60.) The following day, the plaintiff called the defendant's Accommodations Services line and asserted that he had a "mental impairment" that had caused some problems with his work performance. (Def. Ex. W. at 000642-000644. )  On September 1, 2010, the plaintiff submitted a "Reasonable Accommodation and Health Care Provider Information" form (the "RA Form") signed by his doctor, James Jenkins. (Def. Ex. Y at 0997 – 0999; Pl. Dep. at  367-68.) The RA Form identified three medical conditions (Attention Deficit Disorder, Dysthymia, and Obsessive Compulsive Disorder) and requested four accommodations: (1) that he should receive "frequent positive affirmations" and "behavior modification though encouragement"; (2) that the defendant should provide "tolerance for less than perfection"; (3) that his responsibilities should be limited to either "supervisory or individual contributor but not both at the same time"; and (4) that the defendant should adjust his workday to 8:00 – 4:30. (Def. Ex. Y.) The plaintiff, independent of his physician, also requested a retraction of the CAM and PIP.

The defendant implemented the last two of the physician recommended accommodations only.

There is evidence that, essentially, the plaintiff failed to meet all of the requirements of the PIP. By the defendant's count, he completed and released one template. (Def. Ex. T at 2245-2279; Pl. Dep at 423-24.)  The plaintiff contends that he completed three others, although they were neither submitted nor "released. (Pl. Dep. at 390-91, 592-93.)  It is undisputed, however, that the plaintiff neither started nor completed 13 of the 17 templates listed on the four repair template schedules that existed between May and September of 2010. (Pl. Dep. at 506.)

On September 22, 2010, Laczynski terminated the plaintiff's employment for failing to abide by the requirements established in the PIP and for failing to perform the duties of

3

a Level 3 Manufacturing Engineer at Boeing. (Def. Ex. V at 000312 – 000313; Laczynski Dep. at 268, 292.)

Relevant to these motions and in its Amended Answer, the defendant contends that the plaintiff, upon termination, retained hundreds of proprietary documents, in violation of a valid Confidentiality Agreement. [Doc. 58, Ex. D.]

## **APPLICABLE LAW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has

4

been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

### I.   **Breach of Contract**

The defendant and plaintiff have both moved for summary judgment on the defendant's breach of contract claim – the former for it and the latter against it. To recover for a breach of contract, the plaintiff must prove: (1) a binding contract; (2) a breach of contract; and (3) damages proximately resulting from the breach. *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (1962).

With respect to the existence of a binding contract, the plaintiff does not dispute that the confidentiality agreement is valid. (Pl. Dep. at 48; Pl. Mot. Summ. J. at 9.) The plaintiff signed a Confidentiality Agreement when he was hired, on September 9, 2009. [Doc. 58, Ex. D; Pl. Dep. at 48.] Critically, the plaintiff agreed that "**upon termination of my employment, I will deliver [to Boeing] all materials in my possession which contain Proprietary Information**." [Doc. 58, Ex. D § 2 (emphasis added).] At deposition, he admitted his obligation to do so and his failure to meet that obligation. (Pl. Dep. at 21, 52, 64.) South Carolina has agreed that such confidentiality agreements are valid protections

5

of business interest and investment and enforceable against employees who breach them. *See Milliken & Co. v. Morin*, 731 S.E.2d 288, 296 (S.C. 2012). The general enforceability of such agreements has not been challenged by the plaintiff.

With respect to any breach, it is also undisputed that the plaintiff removed and failed to return relevant proprietary documents. (Pl. Dep. at 63-65.) The defendant has identified, at least, the following 26 documents, specifically, which the plaintiff did not return and are alleged to be proprietary:[1]

1. "Planning Alert Bulletin 08/31/2010" (Bates No. 2245);

2. "Boeing Charleston 787 Program Stringer Overlay Repair Planning Template – 6 Plies or Less – RP002-01 Rev. NC Reference Only, August 9, 2010," marked "Boeing Proprietary – Export Control" (Bates No. 2246-2279);

3. "Boeing Repair Procedures for BMS8-276 Composite Structure" dated July 9, 2010, marked "Boeing Proprietary" (Bates No. 2424-2529);

4. "Boeing Manufacturing Development Report," marked "Boeing Proprietary" (Bates No. 3211-3230);

5. "Boeing South Carolina Work Instruction Inspection Pickup/Shakedown" (Bates No. 3402-3425);

6. "787 Process Pickups 'Rework'" (Bates No. 2723-2727);

7. "Repair Process Improvement Opportunities – Draft 04/30/10" (Bates No. 2896-2929);

8. "Detailed Action Plan," marked "For Official Use Only" (Bates No. 3072-3075);

9. "Boeing Charleston 787 Program Stringer Overlay 6 Plies or Less Repair Procedure Draft – RP002-01.1 Rev. Original, June XX, 2010" (Bates No. 2664-2702);

10. Work Order (no title) (Bates No. 719-720);

11. Pages from Boeing repair template with handwritten notes (Bates No. 721-724);

12. "Boeing Charleston 787 Program Stringer Overlay Repair Planning Template – 6 Plies or Less – RP002-01 Rev. NC, August 9, 2010" (Bates No. 726-759);

---

[1] For their confidentiality, the documents are not actually in the record.

13. "Boeing Charleston 787 Program Stringer Overlay Repair Planning Template – 6 Plies or Less – RP002-01 Rev. NC, August 9, 2010" (Bates No. 1516-1549);

14. "Boeing Charleston Process Improvement Detail Action Plan Summary" (Bates No. 3269-32860);

15. Training information with specification titles and descriptions (Bates No. 856-866);

16. Chart of "Fabrication WTs Open on Assembly Ships" (Bates No. 867-883);

17. "Repair Process Improvement Ideas – Draft 3/24/10 Spreadsheet" (Bates No. 3126-3142);

18. "Scarfing Dust Containment Procedure" (Bates No. 3549-3550);

19. Training information (Bates No. 2339-2348);

20. "Draft – Meeting: Composite Repair Training & Certification Plan Review" (Bates No. 807-810);

21. "Flexible Bladder Debulk & Cure Table for Wrinkle Free Stringer Fabrication" (Bates No. 2734);

22. "Planning Templates Project – Composite Repair" (Bates No. 3081);

23. "Repair viewed from top – Smallest ply against existing stringer." (Bates No. 3185);

24. "Quality Improvements" (Bates No. 3580);

25. "Repair Team – Charleston" (Bates No. 2895); and

26. Information on repairing defects (Bates No. 3613-3617).

(Pl. Resp. First Requests for Admission, attached hereto as Exhibit S, Nos. 1–28).

To highlight a few, document number 3 listed above — the "Boeing Repair Procedures for BMS8-276 Composite Structure" – contains more than 100 pages that detail repair procedures. Each page is marked "Boeing Proprietary." (Bates Nos. 2424-2529). Likewise, document numbers 2, 9, 12, and 13 —namely, several versions of the "Boeing Charleston 787 Program Stringer Overly Repair Planning Template – 6 Plies or Less"— provide the defendant's manufacturing engineers with standard processes to follow as they plan repairs on the composite materials of the Dreamliner. (Bogusch Dep. 22-23.); (Bates

Nos. 2246-2279).  In fact, the plaintiff created this repair template during his employment with the defendant, and personally marked the document "Boeing Proprietary."  (Second Pl. Dep. at 85.)

The plaintiff has complained a great deal about the circumstances in which he found himself – the alleged discrimination that he suffered and what he would describe as an impending and unlawful termination, which necessitated retention of work product.  In other words, his primary retort is to argue the merits of his lawsuit as a kind of equitable defense for any misconduct on his part in keeping confidential and proprietary documents.  The ongoing and likely, future, bad acts of the defendant, by his estimation, excuse any confusion on his part or improvident or hurried choice of his to maintain documents as later proof and defense.  Unfortunately, as far as the Court is informed, they do not.  The obligation of the defendant to treat the plaintiff non-discriminatorialy and the plaintiff's obligation, in confidence, run parallel to each other and are not dependent - the proverbial impotency of two wrongs to make things right.

Summarily the plaintiff also makes an argument that the Confidentiality Agreement is illegal somehow because it attempts to prohibit the plaintiff from disclosing documents to the Federal Aviation Administration ("FAA").  The Court need not say much to reject the view.  First, the Court is not convinced that 29 C.F.R. § 1979.102(b), relied upon by the plaintiff, renders the otherwise valid Confidentiality Agreement some illegal nullity or in any way prohibits the defendant from enforcing it.  The regulation simply prohibits "discrimination" on account of any employee providing information relating to an alleged violation of FAA regulation.  *Id.*  It does not make okay the illegal retention of proprietary documents in the first place. Regardless, the plaintiff's argument fails for a more fundamental reason.  As discussed, he took numerous documents.  He has made no showing as to (1) the relevance of *each* particular proprietary document to a specific FAA regulatory violation and (2) whether he submitted such documents to the FAA for that

purpose. That he might have submitted some, even, does not cure the breach as to the rest. Even as the plaintiff has emphasized the documents that he attached to his OSHA/FAA complaints [Doc. 63 at 4.], he has made no effort to describe the overlap between that submission and the documents the defendant accuses him of taking. The plaintiff has not created issues of fact as to the FAA relevancy of every document he retained, as he necessarily must, to rely on such a position in defense of his breach.

Lastly, the plaintiff complains that he was confused about which documents were proprietary and, therefore, implicating of his obligation to return them. This seems dubious, since he identified, at least one, himself, as proprietary. (Pl. Dep. at 85.) Regardless, if he had genuine confusion about it, he was free to ask the defendant or consult an attorney. He did not. To that end, there is evidence that the defendant's policies instruct employees to assume that all documents are proprietary. (Laczynski Dep. at 33-34.) The defendant also maintains a hotline through its website that allows anyone — employees or otherwise — to contact the legal or ethics department. (*Id.* at 24, 37.) Regardless, there is not evidence of record, which creates any issue of fact, that confusion was the reason the plaintiff persisted in possession of hundreds of proprietary documents after his termination. It is not a conclusion a jury should permissibly be allowed to draw.

The plaintiff has also challenged the defendant's ability to establish money damages. But, at this juncture, the defendant has not asked for judgment on any but instead seeks only a permanent injunction against any future disclosure and for a return of the documents. The plaintiff does not really resist that the defendant is entitled to the documents or their destruction at the end of litigation but still seems to resist the need for an injunction as nonsensical. [See generally Doc. 60.] Indeed, in practice, the Court is not precisely sure how the injunction should work, when the plaintiff is likely entitled to some of the documents as a matter of discovery. But, in arguing that the defendant is overacting to the possession of documents the plaintiff might otherwise be entitled to in discovery, is to miss the point. As the defendant argues, it is entitled to the *control* over its proprietary documents. It is the

curator of their authenticity and the decisionmaker as to whether they are implicated in discovery, not the plaintiff. The plaintiff's conduct has robbed the defendant of both rights in its documents. That is the damage suffered, in the least, whether or not other economic damage, in the marketplace, is ever established. That *the plaintiff* produced these documents to the defendant and has been open about their possession has the legal order and point all wrong – they were not his to possess or produce, regardless of his honesty about it, in the first place.

Certainly, applying all relevant considerations, the Court agrees that a permanent injunction should lie. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006); *see also Zahodnick v. IBM Corp.*, 135 F.3d 911, 915 (4th Cir. 1997). The plaintiff does not challenge application of the equitable analysis. As only a recommended solution to the district court, the undersigned would suggest that the plaintiff return the copies and originals of all proprietary documents possessed and retained as of the time of the termination of his employment to the defendant. The defendant should then review any discovery requests from the plaintiff, which might implicate those documents, and reproduce them to the plaintiff in a supplemental response, as legally obligated and necessary.

**II.     Other Counterclaims**

The undersigned has reviewed the plaintiff's arguments relating to the defendant's other counterclaims. Issues of fact exist as to each, such that summary judgment is not warranted. (See Bogusch Dep. at 137-38, 143; Gulley Dep. at 233-34; First Pl. Dep. at 49-50; Second Pl. Dep. at 44, 99); Doc. 58, Ex. T.) Any argument that such claims should be dismissed for lack of monetary damages should be denied for the availability of equitable relief.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's partial motion for summary judgment [Doc. 58] be GRANTED and that the plaintiff be permanently enjoined to (1) return all original and copied documents of the defendant, which he removed at the time of the termination of his employment, and to (2) not disclose any such documents or information to third parties. The plaintiff's motion [Doc. 59] as to the defendant's counterclaims should be DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

July 8, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).