**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

RECEIVED
USDC, CHARLESTON, SC

2013 SEP 19 P 12: 15

| | |
|---|---|
| JOHN WOODS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| THE BOEING COMPANY | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

No. 2:11-cv-02855-RMG

**ORDER**

This matter is before the Court on the Report and Recommendation ("R & R") of the

Magistrate Judge recommending that Defendant's motion for summary judgment be granted in

part and denied in part.[1] (Dkt. No. 73). For the reasons stated below, the Court adopts only

portions of the Magistrate Judge's R & R and GRANTS Defendant's motion for summary

judgment (Dkt. No. 57).

## I. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate" (28 U.S.C.

§ 636(b)(1)), and this Court must determine de novo any part of the Magistrate Judge's

disposition that has been properly objected to. *Id*; Fed. R. Civ. P. 72(b)(3). The Court may also

---

[1] The Magistrate Judge's Report and Recommendation on the parties cross-motions for
summary judgment on Defendant's counterclaims (Dkt. No. 77) will be address by separate order
of the Court.

"receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

## II. PROCEDURAL BACKGROUND

Plaintiff filed this suit alleging four claims under the American with Disabilities Act (ADA): failure to accommodate, retaliation, discriminatory discharge, and harassment / hostile work environment. (Dkt. No. 74 at 2.) Defendant filed for summary judgment on all four claims. (Dkt. No. 57.) The Magistrate Judge recommended this Court grant summary judgment as to the discriminatory discharge and harassment claims but deny summary judgment as to the failure to accommodate and retaliation claims. (Dkt. No. 73.) Both parties timely objected to the Magistrate Judge's R & R. (Dkt. Nos. 74, 76.) Specifically, Plaintiff objected to the Magistrate Judge's recommendation to grant summary judgment on two of his claims, and Defendant objected to the Magistrate Judge's recommendation to deny summary judgment on two of the claims. (*Id.*) Thus, this Court reviews the Defendant's motion de novo.

## III. DISCUSSION

### A. Failure to Accommodate Claim

An employer must make "reasonable accommodations" for an "otherwise qualified individual," unless the company can demonstrate that the accommodation "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position...." 42 U.S.C. § 12111(8). Accordingly, in order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: "(1) that he was an individual who had a disability

within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with

reasonable accommodation he could perform the essential functions of the position; and (4) that

the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d

337, 345 (4ᵗʰ Cir. 2013)(internal quotes omitted).

Implicit in the fourth element is the ADA requirement that the employer and employee

engage in an interactive process to identify a reasonable accommodation. *Haneke v. Mid-Atlantic

Capital Mgmt.*, 131 Fed. App'x 399, 400 (4th Cir. 2005)(citing 29 C.F.R. § 1630.2(o)(3)); *see

also Wilson*, 717 F.3d at 346-47 ("The duty to engage in an interactive process to identify a

reasonable accommodation is generally triggered when an employee communicates to his

employer his disability and his desire for an accommodation for that disability."). An employee

cannot base a reasonable accommodation claim "soley on the allegation that the employer failed

to engage in an interactive process." *Crabhill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed.

App'x 314, 323 (4th Cir. 2011). Instead, "liability for failure to engage in an interactive process

depends on a finding that, had a good faith interactive process occurred, the parties could have

found a reasonable accommodation that would enable the disabled person to perform the job's

essential functions." *Wilson*, 717 F.3d at 347 (quoting *Jones v. Nationwide Life Ins. Co.*, 696

F.3d 78, 91 (1st Cir.2012)).

Here, Defendant advances two arguments for why it is entitled to summary judgment on

Plaintiff's failure to accommodate claim: (1) the accommodations that Plaintiff requests are

unreasonable as a matter of law and (2) that even with the requested accommodations, Plaintiff

would not be able to perform the essential functions of his job.[2] (Dkt. No. 57 at 24-30.) The Court turns to each after addressing Defendant's objection relating to the interactive process.

### 1. Whether Defendant Engaged in the Interactive Process in Good Faith

As an initial matter, the Court agrees with the Magistrate Judge's analysis and finding that Plaintiff has shown a genuine issue of material fact as to whether Defendant engaged in the interactive process in good faith. (*See* Dkt. No. 73 at 12-15.) Plaintiff has put forward an email and testimony that could allow a reasonable jury to find that Defendant made a preconceived determination concerning accommodations. (*See* Pl. Ex. 46; Lazcynski Depo. at 216:20-217:4.)[3] That evidence combined with Plaintiff's testimony that the interactive process consisted of one 30-minute meeting that he viewed as "hostile" (Woods Depo. at 275:1-7) and the fact that Defendant decided to terminate Plaintiff only eight days after this meeting (Lazcynski Depo. at 196:1-8) could allow a reasonable jury to find that Defendant did not engage in the interactive process in good faith.

---

[2] Both of these arguments pertain to the Plaintiff's ability to establish the third element of a *prima facie* case: that with reasonable accommodation he could perform the essential functions of the position.

Defendant also objects to the Magistrate Judge's finding that the Plaintiff put the Defendant on notice that he had a qualified disability long before any performance issues. (Dkt. No. 74 at 4.) Plaintiff has at least raised an issue of fact as to whether Defendant was on notice that he had a qualified disability at the time he was hired. (*See* Pl. Ex. 4.) This notice, however, did not necessarily trigger a duty to engage in an interactive process. *See Wilson*, 717 F.3d at 346-47 ("The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability *and* his desire for an accommodation for that disability.") (emphasis added). Defendant does not dispute that Plaintiff's request for accommodation after receiving the Performance Improvement Plan triggered this duty. (*See generally*, Dkt. Nos. 57, 74.)

[3] The Court cites to depositions transcripts as page:line.

-4-

Defendant takes issue with the Magistrate Judge's observations that Defendant did not follow up with Plaintiff's physician or counter Plaintiff's requested accommodations with more detailed enforceable criteria. (Dkt. No. 74 at 5-6.) However, these observations go to the question of whether Defendant met its obligations in the interactive process. In the interactive process, "*both* parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311–12 (3d Cir.1999) (emphasis added), *cited with approval by Crabhill*, 423 Fed. App'x at 322. "In other words,...the responsibility for fashioning a reasonable accommodation is shared between the employee and employer." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). Courts "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Crabhill*, 423 Fed. App'x at 323 (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir.1996)); *see also Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) ("[Defendant] denied her request without suggesting any alternative solutions, or exploring with her the possibility of other accommodations. Rather than fulfill its obligation to engage in a cooperative dialogue with [Plaintiff], [Defendant's] e-mail suggested the matter was closed.") The Magistrate Judge's statements bear on whether Defendant made such reasonable efforts. *See Carrozza v. Howard County, Md.*, 45 F.3d 425, 1995 WL 8033 at *1 (4th Cir. 1995) (unpublished table decision) (noting that defendant offered to work with plaintiff's psychiatrist).

The Magistrate Judge did not state that Defendant had a obligation *per se* to meet with Plaintiff's psychiatrist but that "there is no evidence of a dialogue, to wit, interaction" and that

this lack of evidence taken together with the evidence cited above creates an issue of fact as to bad faith in the interactive process.[4]  (Dkt. No. 73 at 14-15.)  The Court agrees.

However, as explained above, "liability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Wilson*, 717 F.3d at 347 (quoting *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir.2012)).  This requires the Plaintiff to "identify a reasonable accommodation that would have been possible" and show that, with this accommodation, he could perform the essential functions of his job.  *Id.*

### 2. Plaintiff's Identification of a Reasonable Accommodation

As an initial matter, Defendant made a number of the accommodations requested by Plaintiff.  Plaintiff's physician recommended the following accommodations: 1) performance should be limited to supervisory or individual contributions, but not both at the same time; 2) frequent positive affirmations and behavior modification through encouragement; 3) tolerance for less than perfection; 4) an adjusted workday schedule of 8:00 a.m. to 4:00 p.m. (Def. Ex. Y.) The accommodation of an adjusted workday schedule was implemented.  (Dkt. No. 61 at 25.) Defendant confirmed that Plaintiff did not have any supervisory responsibilities.  (Def. Ex. AA at

---

[4] Defendant repeatedly states that the Magistrate Judge "concluded," "determined" or "found" that Defendant did not engage in the interactive process in good faith. (Dkt. No. 74 at 5-8.)  This is not true.  The Magistrate Judge found only that there was enough evidence to create a dispute of fact as to bad faith in the interactive process. (Dkt No. 73 at 15.)  The Court agrees.
Defendant also claims that, before Plaintiff requested any accommodation, it provided "numerous and extensive accommodations" such as allowing Plaintiff to revise his production schedule and that such actions are evidence that it engaged in the interactive process in good faith.  (Dkt. No. 74 at 6-8.)  But evidence supporting Defendant's position does not entitle it to summary judgment.  Conflicting evidence on a material fact precludes summary judgment.

TBC/CONFIDENTIAL_000335.)  With regard to the third recommendation, "[a]ccording to Boeing policy, management must be tolerate of imperfection." (Pl. Ex. 12.)  The record is replete with evidence that Defendant did in fact accept less than perfection. (*See, e.g.*, Laczynski Depo. 268:13 - 269:2.)  Plaintiff does not dispute that he was allowed to revise deadlines on his repair templates multiple times. (*See* Def. Exs. E, H, J, L, S, U; Woods Depo. 372:5-23; 513:21 - 514:6.)  Plaintiff also admits that his supervisor provided him with at least some positive affirmations and encouragement. (*See* Def. Ex. J ("I also appreciate your dedication, expertise and thoroughness in writing the templates."); Woods Depo. 260:17-261:8 (agreeing this statement was encouragement and positive affirmation); Def. Ex. L ("I believe you are the right person for the job...Let's just try to keep looking to the future."); Woods Depo. 261:24 - 262:2 (agreeing the statement "I want you to succeed and believe you can" was encouragement).)

Plaintiff did, however, request an accommodation that Defendant did not adopt.  Plaintiff requested that Defendant "[h]alt any punitive actions resulting from the current PIP." (Pl. Ex. 12 at TBC/Confidential_000336.)  He further requested "[d]eletion of the PIP and [CAM], because any accommodations were not in place during the subject time period." (*Id.*)  Defendant claims this request is unreasonable as a matter of law because it would give Plaintiff "preferential treatment" over his "nondisabled counterparts." (Dkt. No. 57 at 27.)  Defendant further asserts that this would require it to "abandon a legitimate and non-discriminatory company policy," which it is not required to do. (*Id.* at 27-28.)

-7-

The United States Supreme Court considered and rejected this argument in *US Airways,*

*Inc. v. Barnett*, 535 U.S. 391 (2002):[5]

> US Airways' claim that a seniority system virtually always trumps a conflicting accommodation demand rests primarily upon its view of how the Act treats workplace "preferences." Insofar as a requested accommodation violates a disability-neutral workplace rule, such as a seniority rule, it grants the employee with a disability treatment that other workers could not receive. Yet the Act, U.S. Airways says, seeks only "equal" treatment for those with disabilities. . .It does not, it contends, require an employer to grant preferential treatment. . . Hence it does not require the employer to grant a request that, in violating a disability-neutral rule, would provide a preference.
>
> While linguistically logical, this argument fails to recognize what the Act specifies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal. The Act requires preferences in the form of "reasonable accommodations" that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy. By definition any special "accommodation" requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.
> ...
>
> The simple fact that an accommodation would provide a "preference"—in the sense that it would permit the worker with a disability to violate a rule that others must obey—cannot, *in and of itself*, automatically show that the accommodation is not "reasonable."

535 U.S. at 397-98 (emphasis added).  Thus, the Court rejects Defendant's argument that

retracting the PIP and CAM is unreasonable as a matter of law simply because doing so would be

"preferential" or not in accord with a company policy.

Furthermore, even if an accommodation would be unreasonable in the normal run of

cases, the employee "remains free to show that special circumstances warrant a finding that...the

---

[5] All the cases that Defendant cites in support of its position pre-date *Barnett*. (*See* Dkt. No. 57 at 27-28.)

requested 'accommodation' is 'reasonable' on the particular facts." *Id.* at 405. Here, Plaintiff

claims that the PIP and CAM were drafted without consideration of his disability and any

reasonable accommodations. (Pl. Ex. 12 at TBC/Confidential_000336.)[6] This appears obvious

from the documents. For example, the PIP requires Plaintiff to "[w]hen possible, talk face to

face." (Def. Ex. 9 at TBC/Confidential_000085.) Yet, in his request for accommodation,

Plaintiff states that

> attention deficit [disorder] results in verbal communication difficulties for me such
> as diminished on spot recall and diminished ability to be tactful. This is why I am
> better at written communication because it gives me more time to provide an in-depth
> response. A possible accommodation could be to allow me to provide follow-up
> communications if necessary.

(Pl. Ex. 12 at TBC/Confidential_000336.) Defendant does not dispute and indeed argues that the

PIP and CAM were issued before Plaintiff requested any accommodations and, thus, before

Defendant considered any accommodations. The Court does not find as a matter of law that it is

unreasonable under the circumstances for Plaintiff to request that Defendant reconsider these

documents in light of his disability and request for reasonable accommodation. Thus, Plaintiff

has created an issue of fact as to whether a reasonable accommodation would have been possible.

But he must also present evidence that, with this accommodation, he could have performed the

essential functions of his job. *Wilson*, 717 F.3d at 347.

---

[6] Plaintiff readily admits that "[i]f a PIP were issued after any accommodations were in
place, then it would have validity." (*Id.*)

### 3. Whether Plaintiff Could Perform the Essential Functions of the Position with Reasonable Accommodation

The essential function of Plaintiff's position was "preparing the repair templates in a timely manner."[7] (Dkt. No. 74 at 10.) There is evidence in the record that Plaintiff was able to adequately prepare repair templates. (*See* Def. Ex. T (showing Defendant signed off and released the first repair template prepared by Plaintiff);. Ex. 37 (email from Plaintiff's co-worker stating "Excellent Job!! WOW - Now this is an awesome example of process change notification and very well developed documentation to the same.").) The question is whether Plaintiff has put forward any evidence that, if the PIP and CAM were withdrawn, he could prepare repair templates *in a timely manner*. (*See* Dkt. No. 57 at 22-23.)

The Court can find none in the record. As, the Magistrate Judge found, "what is virtually undisputed in the record was that the plaintiff had failed to produce essentially any of the required work." (R & R, Dkt. No. 73, at 18.) There is no expert testimony from Plaintiff's physician that he would be able to meet deadlines with this or any other accommodation. There is not even Plaintiff's own testimony in the record that he would be able to meet deadlines if his proposed accommodation was adopted.

Plaintiff claims that he made some improvements in his performance near the end of his employment and that this should be enough to create an issue of fact. (Dkt. No. 78 at 4.) There is evidence that Plaintiff's communications improved (Laczynski Depo. 187:18-20), but this has no bearing on whether Plaintiff could meet deadlines. The undisputed evidence shows that Plaintiff, even at the end of his employment, failed to meet deadlines that he himself proposed.

---

[7] In his briefing, Plaintiff does not dispute this was the essential function of his position.

(*See* Def. Ex. S.)  Plaintiff released the first of seventeen assigned repair templates on September 1, 2010, almost three months past its original due date and one day late under the re-baselined schedule that was proposed by Plaintiff as part of the Performance Improvement Plan (PIP). (Def. Ex. T.)  Under the re-baselined schedule, Plaintiff was required to release a second repair template on September 8 and a third repair template on September 17, 2010.  (Def. Ex. S.) While there is evidence that Plaintiff made progress on these second and third templates (Woods Depo. 390:7-9), it is undisputed that he failed to release them by the revised deadlines.  (Def. Ex. U.)  The fact that Plaintiff finally released one of seventeen assigned repair templates *late* and that he made progress on, *but did not timely release*, two others is not evidence having a tendency to show that Plaintiff would be able to meet future deadlines with or without reasonable accommodations.

Because there is no evidence in the record that Plaintiff could perform the essential functions of his job–timely preparing repair templates–even with his proposed accommodations, the Court need not reach the question of whether those accommodations are reasonable.

## B. Retaliation Claim

"[T]o establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001).  "The employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Id.* (citations and internal quotations omitted).  "If the employer does so, the plaintiff must demonstrate that the

proffered reason is a pre-text for forbidden retaliation." *Id.* (citation and internal quotations omitted).

The Court assumes that Plaintiff has established a prima facie case. Defendant concedes that requesting an accommodation is protected activity. (Dkt. No. 57 at 31.) It is undisputed that Plaintiff was terminated. Under Fourth Circuit precedent, merely the closeness in time between the protected activity and the adverse employment action is enough to establish a prima facie case. *E.g., Tensley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). As explained below, the natural inference that arises from the proximity in time between a protected activity and termination is largely negated in this case. However, the Court assumes the proximity in time is still enough to establish a prima facie case under Fourth Circuit precedent. The termination was one month after Plaintiff's request for accommodation.

Defendant has put forward a legitimate, nonretaliatory reason for Plaintiff's termination: Plaintiff failed to meet the requirements of the PIP and failed to perform the duties of a Level 3 Manufacturing Engineer at Boeing. (Laczynski Depo. 268:1 - 269:25.) Thus, the burden is now on Plaintiff to produce some evidence suggesting this reason is pretext for forbidden retaliation. *Rhoads*, 257 F.3d at 392. Under the circumstances present here, proximity in time is not enough to create an issue of fact on pretext.

On August, 16, 2010, Defendant issued the PIP and CAM, before any protected activity occurred. (Def. Exs. M, N.) The CAM stated that "[f]ailure to improve and maintain acceptable performance within 30 days may result in . . . discharge[] from the company." (Def. Ex. M.)

This time was later extended by six days due to Plaintiff's vacation and jury duty, making the deadline for improvement September 21, 2010. (Def. Exs. N, O.) Two days after the CAM and PIP were issued, Plaintiff told his supervisor that he had a disability (Woods Depo. 359:2-24), and three days after the CAM and PIP were issued (August 19, 2010), Plaintiff requested reasonable accommodation. (Def. Ex. W.) Plaintiff was terminated on September 21, 2010, on the deadline established in the CAM and PIP for improvement, and thirty-three days after Plaintiff requested reasonable accommodation. (Compl., Dkt. No. 1 at ¶ 22; Am. Answer, Dkt. No. 33 at ¶ 22.) Because the CAM and PIP, which warned Plaintiff that he may be terminated on September 21, 2010, were issued *before* any protected activity took place, the natural inference that arises from a proximity in time between a request for accommodation and a termination is largely negated. Where, as here, "plaintiff had been disciplined and warned about the status of his job before his employer became aware of his [protected activity]," proximity in time alone is simply not enough to create any issue of fact on pretext. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 n.5 (1998).

Thus, Plaintiff must point to some other evidence that raises a genuine issue of material fact as to the ultimate question, i.e., whether Defendant terminated him for requesting a reasonable accommodation. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 319 (4th Cir. 2005) (holding Plaintiff "failed to raise a genuine issue of material fact as to the ultimate question, i.e., whether [defendant] intentionally discriminated against her.")

Plaintiff has failed to do so. The Magistrate Judge found that evidence of possible bad faith in the interactive process was sufficient to survive summary judgment on the issue of pretext. (R & R, Dkt. No. 73 at 18.) There are circumstances where evidence of bad faith in the

interactive process also bears on, and thus creates an issue of fact as to, pretext (*see Valentine v. Am. Home Shield Corp.*, 939 F. Supp. 1376, 1401-02 (N.D. Iowa 1996)), but that is not always the case. In *Valentine*, the employer offered the employee a part-time position as an accommodation and then revoked the offer stating that there was "too much history" involved in the employee's employment record and terminated him instead. *Id*. at 1387. From these facts a reasonable jury could find that the employer engaged in the interactive process in bad faith *and* that the employee was terminated due to requesting accommodation. *Id*. at 1401-02.

Here, however, the evidence of bad faith does not also lead to a reasonable inference of pretext. Here, the evidence of bad faith is an email and testimony that could lead a reasonable jury to conclude that Defendant went through the motions of an interactive process but did not engage in the process in good faith. (*See* Pl. Ex. 46; Lazcynski Depo. at 216:20-217:4; Woods Depo. at 275:1-7.) Accepting Plaintiff's interpretation of the evidence (and viewing it in the light most favorable to him), this evidence and the undisputed timing of events could lead to a reasonable inference that "Boeing had determined that Woods would not succeed," and thus, did not bother to fully engage in the interactive process. (Dkt. No. 76 at 6.) But it does not suggest, or have a tendency to show, that Boeing fired Woods for requesting a reasonable accommodation. Thus, summary judgment is appropriate.

## C. Discriminatory Discharge Claim

The Court has reviewed this issue de novo and agrees with and adopts the Magistrate Judge's R & R on this point. It is undisputed that Plaintiff was not performing at a level that met Defendant's legitimate expectations, and, thus, he has failed to establish a prima facie case of discriminatory discharge. *See Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc*., 53 F.3d 55, 58

(4th Cir. 1995). Plaintiff claims that Defendant's expectations were unclear before Laczynski became his supervisor in June of 2010. (Dkt. No. 76 at 4.) Assuming that is true, he does not dispute that expectations were clear after Laczynski became his supervisor. Plaintiff admits that he and his supervisor created revised schedules for the release of repair templates starting in June of 2010 and that he did not meet any of the deadlines contained therein. (Def. Exs. E, H, J, L, S, U; Woods Depo. 372:5-23; 513:21 - 514:6.)

The Court finds that the evidence of Plaintiff's continued failure to meet deadlines is "so substantial and persuasive that no reasonable jury could find by a preponderance of the evidence that []he was performing [his] job adequately." *Ennis*, 53 F.3d at 62.

## D. Hostile Work Environment Claim

The Court has reviewed this issue de novo and agrees with and adopts the Magistrate Judge's R & R on this point. Plaintiff points to evidence that "co-workers and supervisors [were] annoyed by Woods" and that one co-worker was "aggressive and impatient." (Dkt. No. 76 at 9, 10.) However, this does not state a claim for a hostile work environment. First, Plaintiff must establish the harassment was based on his disability. *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). He has not put in any evidence to suggest that the purported harassment was based on his disability. Second, expressions of annoyance and impatience are not "sufficiently severe or pervasive [so] as to alter a term, condition, or privilege of employment." *Id.* Thus, Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court adopts the following sections of the Magistrate Judge's R & R: Factual Background and Applicable Law (Dkt. No. 73 at 1-5); ADA Retaliation

-15-

Claim, flush language and Prima Facie Case (Dkt. No. 73 at 15-18); Discriminatory Discharge (Dkt. No. 73 at 18-19); and Hostile Work Environment Claim (Dkt. No. 73 at 19-21). The Court declines to adopt the remainder of the R & R. For the reasons stated in the adopted portions of the Magistrate Judge's R & R and the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 57).

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

Charleston, South Carolina
September 19, 2013

-16-