IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JOHN WOODS | ) |
| Plaintiff, | ) |
| vs. | ) No. 2:11-cv-02855-RMG |
| THE BOEING COMPANY | ) ORDER |
| Defendants. | ) |

This matter is before the Court on the Report and Recommendation ("R & R") of the Magistrate Judge. (Dkt. No. 77). For the reasons stated below, the Court adopts portions of the R & R, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 58), and the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (Dkt. No. 59.)

## I. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" (28 U.S.C. § 636(b)(1)), and this Court must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to. *Id*; Fed. R. Civ. P. 72(b)(3). The Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

## II. PROCEDURAL BACKGROUND

Plaintiff filed this suit alleging four claims under the American with Disabilities Act (ADA): failure to accommodate, retaliation, discriminatory discharge, and harassment / hostile work environment. (Dkt. No. 74 at 2.) Defendant pleaded counterclaims for breach of contract, conversion, breach of duty of loyalty, trespass to chattels, and violation of the South Carolina Uniform Trade Secrets Act (SCTSA). (Dkt. No. 33 at 13-21.) The Court has granted summary judgment for Defendant on the claims raised in the Complaint. (Dkt. No. 82.) Plaintiff has moved for summary judgment against Defendant on all of its counterclaims (Dkt. No. 59), and Defendant has moved for summary judgment on its breach of contract counterclaim only. (Dkt. No. 58.) The Magistrate Judge recommended this Court grant summary judgment to Defendant on its breach of contract claim and deny Plaintiff's motion for summary judgment on all counterclaims. (Dkt. No. 77.) Plaintiff timely objected to the Magistrate Judge's R & R. (Dkt. No. 80.)

## III. DISCUSSION

### A. Breach of Contract Claims

Under South Carolina law, "[t]he elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Southern Glass & Plastics Co., v. Kemper*, 732 S.E.2d 205, 208 (S.C. Ct. App. 2012) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962). A party may request actual damages and permanent injunctive relief on its claim for breach of contract. *See PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127 (4th Cir. 2011)("[T]he mere fact that a plaintiff may recover damages does not negate his right to injunctive relief."); *see also Milliken & Co. v. Morin*, 685

S.E.2d 828, 832-33 (S.C. Ct. App. 2009). A request for damages is tried to a jury and a request for equitable relief is tried to the Court. *See Time Warner Cable v. Condo Serv.*, 672 S.E.2d 816, 819 (S.C. Ct. App. 2009). Because defendant has failed to put forward any evidence of monetary damages, summary judgment is appropriate as to its claim for damages. However, as explained below, Defendant is entitled to summary judgment on its claim for injunctive relief.

Plaintiff agrees that he signed a valid confidentiality agreement. (*See* Dkt. No. 59-1 at 9 ("When hired by Boeing, Plaintiff along with every other Boeing employee, agreed to keep confidential certain company documents and proprietary information under the terms of the Intellectual Property and Confidentiality Agreement.").) Plaintiff also agrees that he took documents from Defendant and did not return these documents upon his termination. (*E.g.*, First Woods Depo. 49:7 - 51:15; Dkt. No. 80 at 1-2; Dkt. No. 63 at 8.) To the extent that these documents contained proprietary information, these actions were a breach of the confidentiality agreement that Plaintiff signed. (*See* Def. Ex. D at TBC/CONFIDENTIAL_001639 ("I will preserve in confidence and will not disclose or use...any Proprietary Information...except as required in my work...or as authorized in writing by [Boeing]. Upon termination of my employment, I will deliver to [Boeing] all materials in my possession which contain Proprietary Information.").) In its brief, Defendant has specifically identified twenty-six proprietary documents taken by Plaintiff in violation of the confidentiality agreement and not returned upon his termination. (Dkt. No. 58 at 10-12.) Plaintiff has not claimed that any of these documents are in fact not proprietary. (*See generally*, Dkt. No. 60; Dkt. No. 80.)

In sum, Plaintiff does not dispute that he signed a valid confidentiality agreement or that he took and retained proprietary documents in violation of the confidentiality agreement.

Instead, he claims enforcing the confidentiality agreement under the circumstances present here violates public policy. (Dkt. No. 80 at 3-4.) Specifically, Plaintiff claims the contract should be held unenforceable here because Plaintiff turned over documents to the FAA (and apparently other federal agencies) and because he retained documents to support his ADA claims. (Dkt. No. 80 at 10-13; Dkt. No. 60 at 1.)

### 1. Turning Over Documents to the FAA

Plaintiff essentially proposes a public policy exception to enforcing a confidentiality agreement where a party discloses violations of law to a federal agency, claiming that companies like Boeing "could avoid the FAA's scrutiny entirely by holding its employees silent under this type of agreement." (Dkt. No. 59-1 at 11.) While the Court "sees some merit in the public policy exception that [Plaintiff] proposes, [it] need not decide whether to adopt it here" because Plaintiff's "vast and indiscriminate appropriation" of Defendants's documents would not fall into such an exception.[1] *See United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011).

Of the twenty-six documents identified as proprietary by Defendant, Plaintiff only states that two of these (Nos. 11 and 15) were attached to his FAA complaint. (Dkt. No. 80 at 5-10.)

---

[1] The SEC has adopted such a rule. *See* 17 C.F.R. § 240.21F-17(a)("No person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation, including enforcing, or threatening to enforce, a confidentiality agreement."). Courts have also held that relators in *qui tam* actions are exempt from liability for breach of a confidentiality agreement for the disclosure to the government of documents showing fraudulent conduct. *E.g., United States ex rel. Ruhe v. Masimo Corp.*, --- F.Supp.2d ----, 2012 WL 7681937 at *4 (S.D. Cal. 2012)("Obviously, the strong public policy would be thwarted if [defendant] could silence whistleblowers and compel them to be complicit in potentially fraudulent conduct."); *United States v. Cancer Treatment Cts. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004).

Plaintiff also retained the documents for seven months after his termination, and, thus, in violation of the confidentiality agreement, without making any complaint to the FAA. It was not until April of 2011, after Plaintiff's HR Complaints were dismissed that Plaintiff made a complaint to the FAA. (Dkt. No. 59-1 at 6.)

Defendant did not plead a breach of contract cause of action based on Plaintiff's act of providing documents to the FAA or any other administrative agency. (*See* Dkt. No. 33 at 13-16.) Nor does Defendant argue in its briefs that the act of providing documents to the FAA constitutes a breach of the confidentiality agreement. Rather, Defendant argues that Plaintiff's failure to return proprietary documents upon his termination and Defendant's act of turning documents over to his attorney are violations of the confidentiality agreement. (Dkt. No. 58 at 21; Dkt .No. 62 at 7, 8.) These two acts to constitute a violation of the confidentiality agreement. *See Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 915 (4th Cir. 1997). In *Zahodnick*, as here, the confidentiality agreements at issue stated that the employee could not disclose confidential information to anyone outside of the company and that the employee had to return all company property at the end of his employment. *Id.* The Fourth Circuit upheld summary judgment in favor of the employer where the employee "retained confidential materials belonging to [the employer] after termination of his employment and forwarded those documents to his counsel without [the employer's] consent." *Id. Zahodnick* is controlling here, and Defendant is entitled to summary judgment.

2. Retaining Documents to Prosecute an ADA Claim

Next, Plaintiff claims that the confidentiality agreement is unenforceable to the extent that he retained documents to pursue his ADA claims in this action. Other courts that have

considered this argument have rejected it. *See Haught v. Louis Bekerman*, LLC, 417 F. Supp. 2d 777, 783-84 (N.D. W.Va. 2006); *JDS Uniphase Corp. v. Jennings*, 473 F.Supp.2d 697, 702-03 (E.D. Va. 2007). The Court must do so here as well. First, *Zahodnick*'s holding that a company can enforce a confidentiality agreement for the act of disclosing documents to an attorney implies that an employee cannot retain documents in violation of a confidentiality agreement for the prosecution of a lawsuit against the employer. The *Haught* court appears to have similarly felt *Zahodnick* was controlling on this issue. *See Haught*, 417 F. Supp. 2d at 783.

Next, the Court notes that in many instances evidence relating to ADA or discrimination claims will not be proprietary (e.g., emails showing discriminatory animus; the employee's personnel records; requests for accommodation submitted by an employee). To the extent that it is, employees have a way to obtain information needed for their suit: discovery. *See Hodgson v. Texaco, Inc.*, 440 F.2d 662, 663 (5th Cir. 1971)("The employee had a legitimate remedy: he could have sought a subpoena duces tecum to require the company to produce the records desired in court.").

While spoliation is a legitimate concern, the law has fashioned remedies for those concerns. *See, e.g., Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D.Va.2001) (noting that spoliation may occur even in the absence of a court order requiring production of particular documents, and that, in addressing spoliation, courts have "considerable discretion, including ordering dismissal, granting summary judgment, or permitting an adverse inference to be drawn against the party as a means of leveling the playing field"). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)(upholding dismissal of action for spoliation). An employee can trigger this duty to preserve evidence by sending a letter to her employer. *E.g. Goodman v. Praxair Serv., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009)("[W]here...[a] letter openly threatens litigation, then the recipient is on notice that litigation is reasonably foreseeable and the duty to preserve evidence relevant to that dispute is triggered.").

The Court finds that public policy does not "authorize disgruntled employees to pilfer a wheelbarrow full of an employer's proprietary documents in violation of their contract" merely because they intend to file suit against their employer. *Jennings*, 473 F.Supp.2d at 702.

### 3. Availability of Injunctive Relief

To obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006). All of these elements are met.

As the Magistrate Judge found (Dkt. No. 77 at 9-10), Defendant's loss of control over its valuable proprietary documents is an irreparable injury. *See Indus. Packaging Supplies, Inc. v. Martin*, No. 6:12-cv-713, 2012 WL 1067650 *5 (D. S.C. Mar. 29, 2012)(citing cases supporting the proposition that "[c]ourts consistently have recognized that...the misappropriation of proprietary information constitutes irreparable harm to an employer.") Similarly, "disclosure of business proprietary information can be highly damaging and irreparable by conventional legal

remedies." *SNR Roulements v. Untied States*, 704 F. Supp. 1103, 1107 (Ct. Int'l Trade 1989). Furthermore, Defendant has put forward undisputed evidence that its damages have been difficult to determine. (*See* Dkt. No. 58 at 24-25.) "Where monetary damages are difficult to ascertain, remedies at law are generally inadequate." *Uhlig, LLC v. Shirley*, No. 6:08-cv-01208, 2012 WL 2458062 at * 3 (D. S.C. June 27, 2012)(citing *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir.1994)).

Equity also favors an injunction. Defendant has a substantial interest in protecting its proprietary information. (*See* Second Woods Depo. 99:9-17 ("They are competitive with a couple of other airlines, and the 787 is quite modernized compared to other aircrafts being made by themselves or other aircraft manufacturers. There's a lot of new stuff in this 787 that makes it a better airplane, more efficient, and they wouldn't want competitors to benefit from anything that they developed themselves, Boeing.").) Plaintiff's only claimed interest in retaining the documents are (1) to file an FAA complaint, which he did in April of 2011 (Dkt. No. 59-1 at 6) and (2) the prosecution of his ADA claims which have now been resolved. (Dkt. No. 82.) Indeed, Plaintiff does not oppose injunctive relief "after this lawsuit and any administrative proceedings are completed." (Dkt. No. 59-1 at 7.) Finally, the public interest "favors the protection of confidential business information and the enforcement of valid contracts." *Western Industries-North, LLC v. Lessard*, No. 1:12-cv-177, 2012 WL 966028 at * 6 (E.D. Va. Mar. 21, 2012); *accord ABT, Inc. V. Juszczyk*, No. 5:09-cv-119, 2010 WL 3156542 at * 9 (W.D.N.C. Aug. 10, 2010). Enforcement of such contracts "makes sure that businesses are able to share confidential and proprietary information with its employees without fear it will end up in the

hands of a competitor." *ISCO Indus., LLC v. Erdle*, No. 5:11-cv-552, 2011 WL 5101599 at *4 (E.D.N.C. 2011).

Thus, the Court finds that Defendant is entitled to a permanent injunction, requiring Plaintiff to return the copies and originals of all documents containing Defendant's proprietary information within his custody or control, including documents in the possession of his attorney. The Court also orders that Plaintiff is prohibited from copying, maintaining or disclosing any documents containing Defendant's proprietary information.

**B. Other Counterclaims**

As to Defendant's other counterclaims, Plaintiff argues that Defendant has not put forward any evidence of damages. (Dkt. No. 59-1 at 14, 16-17, 18.) Defendant responds that (1) it is entitled to an injunction and (2) a trier of fact could "find that Boeing has been damaged." (Dkt. No. 62 at 14-15, 15-16, 18, 19.) As to Defendant's first argument, the Court has granted the entirety of the equitable relief requested by Defendant. (*See* Dkt. No. 33 at 19 (stating requested injunctive relief).) Thus, Defendant's claims for equitable relief are moot. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (holding that a claim is moot "when the claimant receives the relief he or she sought to obtain through the claim").

Defendant has put forward no evidence of any monetary damages. (*See* Dkt. No. 62.) Assertions that a trier of fact could find some ethereal damage is not sufficient to survive summary judgment on these claims. *See Clark v. Greenville County*, 437 S.E.2d 117, 119 (S.C. 1993) ("[T]he trial judge properly granted summary judgment against appellants since the record is devoid of any evidence of damages."); *Baughman v. AT&T Co.*, 410 S.E.2d 537, 546 (S.C. 1991) ("While proof, with mathematical certainty, of the amount of loss or damage is not

required, in order for damages to be recoverable the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. Neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation."). Therefore, the Court grants Plaintiff's motion for summary judgment on the remaining counterclaims.

## IV. CONCLUSION

For the reasons stated above, the Court adopts all portions of the R & R (Dkt. No. 77) except for the section "Other Counterclaims" on page 10. For the reasons stated in the R & R and the reasons stated above, Defendant's Motion for Summary Judgment (Dkt. No. 58) is GRANTED. For the reasons stated in the adopted portions of the R & R and the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. No. 59) is DENIED as to Defendant's counterclaim for breach of contract and GRANTED as to all other counterclaims.

**IT IS ORDERED THAT** Plaintiff return copies and originals of all documents containing Defendant's proprietary information within Plaintiff's custody or control, including documents in the possession of his attorney, to Defendant within seven (7) days of the date of this order.

**IT IS FURTHER ORDERED THAT** Plaintiff is prohibited from copying, maintaining or disclosing any documents containing Defendant's proprietary information.

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

Charleston, South Carolina
September 23, 2013